UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEBORAH ARRAJ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-11335-JGD |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

March 30, 2015

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises out injuries sustained by the plaintiff, Deborah Arraj, as the result of a bicycle accident that occurred on May 24, 2012 in the Parker River Wildlife Refuge ("Refuge") in Newburyport, Massachusetts. The Refuge is owned and operated by the U.S. Fish and Wildlife Service. While she has no memory of the accident, it is Arraj's contention that while she was riding a bicycle down Refuge Road, she became entangled in yellow nylon rope strung between poles set in concrete buckets that were used seasonally to block off parking areas adjacent to the road, and that as a result she fell and suffered serious personal injuries. Arraj contends that the use of the nylon rope was negligent, and she has brought suit against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2675.

This matter is presently before the court on the defendant's "Motion for Summary Judgment" (Docket No. 36). The United States contends that the material facts are not in dispute and that it is entitled to summary judgment because (1) the yellow rope was an open and obvious condition, and in any event the plaintiff admitted that she saw the rope barrier; and (2) there is no evidence that the rope barrier caused Arraj's accident. This court recognizes that "summary judgment is rarely granted on the merits of a negligence action because of the jury's unique competence in applying the reasonable man standard to a given fact situation." Foley v. Matulewicz, 17 Mass. App. Ct. 1004, 1005, 459 N.E.2d 1262, 1263 (1984) (internal quotation and citation omitted). However, summary judgment is appropriate where, as here, the plaintiff has failed to put forth evidence establishing that the defendant's negligence caused her injury. See Glidden v. Maglio, 430 Mass. 694, 696-97, 722 N.E.2d 971, 974 (2000). After a careful review of all the evidence, and for the reasons detailed herein, the defendant's motion for summary judgment is ALLOWED.

## II. STATEMENT OF FACTS[1]

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. See Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008). Applying this principle, the relevant facts are as follows.

On May 24, 2012, Arraj borrowed a bicycle from her sister to ride to the Refuge on Plum Island. (PF ¶ 3). Arraj checked the brakes and tires of the bicycle, and noted that they were fine, and that the bicycle was fairly new and in good condition. (PF ¶ 7). Arraj did not find anything wrong with the bicycle all that day. (Id.). Arraj was an experienced bicyclist, and rode a bicycle at least weekly for eight to nine months of the year in her home state of New Mexico. (PF ¶ 5). She had been to the Refuge some 12 times before, but she does not recall ever riding a bicycle there prior to the date of the accident. (PF ¶ 8).

May 24, 2012 was a clear and beautiful day. (DF ¶ 5). Arraj left her sister's home in Newburyport sometime before noon. (DF ¶ 4). She started off with her daughter and her daughter's husband, but they parted ways after about two miles, and Arraj continued to the Refuge by herself. (DF ¶ 6). Arraj was not wearing a helmet. (PF ¶ 7). She had a

---

[1] The facts are derived from the following materials: (1) the Defendant's "Local Rule 56.1 Statement of Undisputed Facts" ("DF") (Docket No. 38); (2) the exhibits attached thereto ("Def. Ex. ___"); (3) the "Plaintiff's Statement of Material Facts Local Rule 56.1" ("PF") (Docket No. 42); (4) the exhibits attached thereto ("Pl. Ex.___"); (5) the "Joint Supplemental Statement of Facts" ("JF") (Docket No. 46); and (5) the exhibits attached thereto ("Jt. Ex.___"); (6) the Affidavit of Frank P. Drauszewski, Deputy Refuge Manager since 1994 and Acting Refuge Manager since 2013 ("Drauszewski Aff.") (Docket No. 44-2).

backpack, cell phone, water bottle, wallet and towel with her, but there was no rack for these items on the bicycle. (PF ¶ 7; DF ¶ 29).

After she entered the Refuge, Arraj passed the gatehouse and continued southbound onto Refuge Road. (DF ¶ 15). Refuge Road is a north/south two way road which is approximately 20 feet wide, with each travel lane being 10 feet 2 inches wide. (Drauszewski Aff. ¶ 9). It has been described as narrow, with limited sight clearances. (PF ¶ 23). Arraj rode towards the Hellcat Wildlife Observation Area, which is approximately 3.5 miles beyond the gatehouse. (DF ¶ 16). On her way, Arraj passed parking Lots 2 and 3 on her left. (See Def. Ex. 3 (Map)). Lots 2 and 3 were blocked off with rope barriers, as described more fully below. (DF ¶¶ 17, 20). There are no designated bicycle lanes on Refuge Road, and there are no markings to distinguish the asphalt surface of the road from the asphalt surface of the parking lot. (PF ¶¶ 13, 14). Past Hellcat Wildlife Observation Area the road changes from pavement to gravel, at which point Arraj turned around and headed back north on the same road. (DF ¶ 16). She passed Lot 3 (now on her right) and continued down the road towards Lot 1. (DF ¶¶ 20, 21; Def. Ex. 3). The accident occurred at Lot 2. (DF ¶ 21). Arraj has no memory of how the accident happened, and there are no known witnesses to the accident. (DF ¶¶ 22, 24).

### The Rope Barriers

Since the mid-1990s, and on the day of the accident, the Refuge has blocked off access to the beach with ½ inch, high visibility, yellow nylon rope strung between poles set in concrete buckets, which are placed along the beach parking areas adjacent to

Refuge Road. (DF ¶ 10). The rope is used seasonally to prevent beach access at four parking lots, including Lot 2 where the accident happened. (DF ¶ 11). On top of at least every other pole are signs saying "closed area" or "no parking," and they are intended to prevent people from accessing the beach during the nesting period of the Piping Plovers. (PF ¶ 18; Drauszewski Aff. ¶ 8). Lot 2 is more than 300 feet in length, and the poles were approximately 30-35 feet apart on the date of the accident. (JF ¶¶ 2-3). In general, the poles in Lot 2 are set back approximately 6 feet from the northerly lane of travel. (Drauszewski Aff. ¶ 10). However, there is no evidence as to their exact location at the time of the accident.

There is evidence in the record that the yellow ropes can fade over time, that the height of the rope between the signs can vary up to two feet, that on occasion cars have driven over ropes, and that poles can get knocked over, blown over and moved. (PF ¶¶ 30, 20-22). However, there is no evidence in the record as to the brightness of the yellow rope color, or the height of the ropes, at the time of the accident, and it appears from photographs taken shortly after the accident that all of the poles were erect at the time of the accident except for the one which was underneath the bicycle after the plaintiff fell. (See Def. Ex. 12).[2]

---

[2] The plaintiff also asserts as undisputed facts that on occasion vehicles speed at the Refuge, that on occasion some have gone over the side of the road, and that there are buses that drive on Refuge Road. (PF ¶¶ 24-25). However, there is no evidence linking any of these facts in any way to the plaintiff's accident.

Over the last three years, the Refuge received approximately 10,000 visitors per month during the summer months, when the ropes are generally installed, including an average of 595 bicyclists per month. (Drauszewski Aff. ¶ 11). Apart from the instant case, no other accidents involving the yellow ropes have been reported since they started to be used. (Drauszewski Aff. ¶ 12).

### **Arraj's Knowledge of the Ropes**

As noted above, the rope barriers have been used at the Refuge for many years. The plaintiff testified that she had noticed the beach closures in the past when she had visited the Refuge. (DF ¶ 12). Moreover, the plaintiff testified that she noticed the yellow rope blocking off the parking lots on the date of the accident, while she was traveling southbound heading toward the Hellcat Wildlife Observation Area. As she testified:

> Q. When you were traveling onto the refuge southbound, did you notice any areas where the beach was closed?
>
> A. I noticed where the parking lot was closed.
>
> Q. On, as you were traveling southbound, was it on your right-hand side or your left-hand side?
>
> A. The left.
>
> Q. Okay. Do you know where, can you show me where on this map that was? You're pointing at, between Parking Lot 2 and Parking Lot 3?
>
> A. Yes.
>
> Q. Okay. What did you notice about the parking lot being closed?

> A. I noticed there was some yellow rope.
>
> Q. Okay. What else did you notice, if anything?
>
> A. That was it.
>
> Q. Were there signs?
>
> A. Not that I saw.
>
> Q. You noticed yellow rope blocking off the parking lot between Parking Lot 2 and 3? In that area?
>
> A. I can't recall if it was between.
>
> Q. Okay. In the area of Lot 2 and Lot 3, on your left-hand side as you were traveling southbound, you noticed yellow rope blocking off parking areas?
>
> A. I did.

(Def. Ex. 1 (Arraj Dep.) at 73-74).

While Arraj has no memory of the accident, after she had turned around and started to head north on Refuge Road, she would have passed Lot 3 again. (See DF ¶ 20). The same type of yellow rope barriers to restrict access to the beach were used at Lot 3 as were used at Lot 2. (Id.).

### **The Accident**

As noted above, Arraj has no memory of how the accident happened, and there are no known witnesses to the accident. (DF ¶¶ 22, 24). The plaintiff has not offered the opinion of any accident reconstruction expert.

Officer Christopher Husgen was at the Refuge headquarters when he received a call at approximately 12:35 p.m. that someone had collapsed at parking Lot 3. (DF ¶ 25).

When he arrived at the scene he found Arraj laying prone on the ground being assisted by first responders from the Newbury Fire and Police Departments. (DF ¶ 26). Officer Husgen took photographs of the scene (Def. Ex. 12) but he did not speak to any witnesses to the accident. (DF ¶¶ 27-28). The photographs show the bicycle laying on top of a downed post with a sign on top, and the rope laying across the bicycle. (Def. Ex. 12). The rope is near but is not wrapped in the pedal. (Id.). The plaintiff had passed a number of ropes strung between posts at Lot 2 before reaching the accident site, and there were a number of ropes strung between posts ahead of her as well. (Id.).

Officer Husgen wrote an Incident Report, which included the following:

> At approx. 12:35 pm, I received a phone call from Mike Poncsak at the gatehouse reporting a person ... had collapsed at lot 3. Newbury ambulance was on its way. I responded from HQ and was at the gate at 12:40 pm, and at lot 2 a minute later where I observed the ambulance, and Newbury PD assisting. There was a woman on the ground supine, and she was confused as to her location. I observed a swollen left eye, and bruising on the left temple. **A bicycle was beside her in contact with the rope, and sign post. It appears that she contacted the rope, and fell on her left side and struck her head.**
>
> She was not wearing a helmut [sic]. I supported the woman's legs as she was rolled onto the back board. Recovered her towel, water bottle and bicycle and stored in VCS at lot 1. The bicycle tires had low air pressure and there was no rack for the items. She had a purse that went with her on the ambulance. Transported by Newbury Fire.

(Def. Ex. 9 (Incident Report) (emphasis added)). The plaintiff relies on this report in support of her contention that the ropes caused the accident.

-8-

Arraj was treated at Beth Israel Deaconess Medical Center in Boston. She was diagnosed with a closed head injury, traumatic subarachnoid hemorrhage, orbital floor fracture, left clavicle fracture and fractured ribs. (DF ¶ 32). While her physical injuries have healed, Arraj reports that she continues to suffer from dyslexia, memory loss, dizziness, vestibular disorder and some cognitive issues. (DF ¶ 33).

### **Plaintiff's Expert**

Arraj has submitted a report from her expert, Kevin J. Quinn, PE (Pl. Ex. 7), which was incorporated into an affidavit he submitted. (Pl. Ex. 6). Mr. Quinn is a registered professional engineer and president of Quinn Engineering, Inc., a three-person company that provides consulting engineering services for land use planning and development. (Aff. at ¶¶ 1, 2). Mr. Quinn opined that the rope "barrier system did not present a visually well-defined perimeter, and lacked many features useful to enhance visibility." (Aff. at ¶ 9). This is particularly important in the case of bicyclists, according to Mr. Quinn, because "[a] bicyclist riding parallel to a barrier relies on peripheral vision to monitor its location, and can lose track of the location of a poorly defined barrier." (Aff. at ¶ 11). Mr. Quinn opined further that there were a number of alternatives to enhance the visibility of the barrier system. (Aff. at ¶¶ 11-13).[3] Finally, he opined "that

---

[3] Mr. Quinn opined that the rope barrier system did not conform with the Manual of Uniform Traffic Control Devices prepared by the Federal Highway Administration. (Aff. ¶ 14). While the defendant does not believe that MUTCD applies in this case, it is not challenging this opinion for purposes of the summary judgment motion only. (Def. Mem. (Docket No. 37) at 5 n.4).

-9-

the lack of visibility of the post-and-rope barrier system employed at Lot 2 of the Parker River National Wildlife Refuge was the proximate cause of the accident suffered by Ms. Arraj." (Aff. at ¶ 14). Mr. Quinn does not address Arraj's testimony that she was aware of the rope barrier at Lot 2.

In describing the accident, Mr. Quinn stated that "[t]he bicycle which Ms. Arraj was riding at the time of her accident became entangled with the rope and a metal stanchion post." (Aff. ¶ 6).[4] He then asserted as follows:

> The failure to employ a traffic control system which provided adequate visibility prevented [Arraj] from visually identifying and monitoring the location of the barrier as she rode alongside it. There was a greater likelihood that a person who rode a bicycle in proximity to the barrier could sustain a collision with it, versus a traffic control system which complied with accepted current standards for traffic controls. This is especially true in the acknowledged narrowness of the roadway, with limited site clearance, buses on the road and vehicular traffic exceeding the speed limit.

(Aff. ¶ 14). There is no indication in the record that Mr. Quinn had any factual support for his assumption as to how the accident happened — there are no known witnesses, there is no evidence that Arraj became entangled in the rope (as opposed, for example, to falling onto the rope), Arraj has not testified that she did not see the ropes at the time of the accident, and there is no evidence as to actual traffic conditions at the time of the

---

[4] Similarly, in his report Mr. Quinn stated that "[a]s she bicycled along the road, parallel to the barrier, Ms. Arraj became entangled in the rope and a stanchion, and fell to the ground, incurring injury.... Photographs of the incident scene show that Ms. Arraj collided with a stanchion made of narrow channel-shaped metal, dull gray in color, mounted on a base, with a small sign on top." (Pl. Ex. 7 at 1).

accident. Nor is there any indication that Mr. Quinn attempted to, or is qualified to, reconstruct the accident from the available evidence, including photographs. Nevertheless, the plaintiff relies on Mr. Quinn's testimony to support her claims that it was negligent to use the rope barriers and that the rope was the cause of the accident.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

#### A. Summary Judgment Standard of Review

By its motion, the United States is seeking summary judgment on the plaintiff's claim of negligence. "The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional quotation omitted). Accordingly, the burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg, 548 F.3d at 56 (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id.

### B. Standard of Review - Negligence

This action was brought under the Federal Torts Claims Act ("FTCA"). The FTCA waives sovereign immunity for certain negligence claims. 28 U.S.C. § 1346(b)(1). Under the FTCA, the United States may be held liable for negligence causing personal injury to Arraj only if a private person would be liable to her under "the law of the place where the act or omission occurred." Id.; Zabala Clemente v. United States, 567 F.2d 1140, 1143 (1st Cir. 1977). Therefore, as the parties agree, the law of Massachusetts applies in the instant case.

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 447 Mass. 141, 146, 849 N.E.2d 829, 834-35 (2006). Arraj bears the burden of proof on each element of her negligence claim by a preponderance of the evidence. See Glidden, 430 Mass. at 696, 722 N.E.2d at 973. "'By a preponderance of the evidence' means that the trier of fact had to conclude that [the allegation] was more probable than not . . . . If the proposition is as probably false as it is true, then the plaintiff has not met her burden." Cont'l Assur. Co. v. Diorio-Volungis, 51 Mass. App. Ct. 403, 408 n.9, 746 N.E.2d 550, 555 n.9 (2001) (citations omitted). "A violation of a statute, ordinance, or regulation, although not conclusive, is evidence of negligence on the part of a violator as to all the consequences that the statute, ordinance, or regulation was intended to prevent." Aleo v. SLB Toys USA, Inc., 466 Mass. 398, 408, 995 N.E.2d 740, 750-51 (2013) (quoting Guinan v. Famous Players-Lasky Corp., 267 Mass. 501, 516, 167 N.E. 235, 242 (1929)). Finally, "[a] court should not grant a party's motion for summary judgment merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial." Foley, 17 Mass. App. Ct. at 1005, 459 N.E.2d at 1262 (1984) (internal quotation omitted).

**C.    Causation**

"Causation is an essential element" of a plaintiff's claim of negligence. Glidden, 430 Mass. at 696, 722 N.E.2d at 974. Generally, the question of causation is for the fact finder. Cracchiolo v. E. Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014) (quoting Jupin, 447 Mass. at 146, 849 N.E.2d at 835). "Only where no view of the evidence could warrant a jury in finding the defendant negligent can it be held as a matter of law that the plaintiffs cannot recover." Luz v. Stop & Shop, Inc. of Peabody, 348 Mass. 198, 203-04, 202 N.E.2d 771, 775 (1964). This is such a case.

Plaintiff's theory is that the lack of visibility of the rope was the proximate cause of the accident. (See Quinn Aff. ¶ 14). However, there is no evidence in the record to support the theory that Arraj became entangled in the rope, thereby causing her to fall (as opposed to her falling into the barrier first). Similarly, there is no evidence that if she became entangled in the rope, she did so because she didn't see it.[5] The "possible" causes of the accident are endless based on this record – for example she could have lost control of her bicycle for any number of reasons (a bee? a rock? a sneeze? a passing vehicle?), and toppled onto the pole bringing it down along with the rope. There is

---

[5] Based on the undisputed facts this court questions whether it would even be reasonable for a jury to infer that Arraj did not see the ropes. She testified that she saw them at Lot 2 when she started her trip in the Refuge, she would have seen them at Lot 3 both traveling southbound and northbound, and the accident took place in Lot 2 after Arraj had passed several posts set in concrete along her path of travel. There is no evidence that Arraj, an experienced bicyclist, was unaware of her surroundings for miles. A more logical inference would be that a sudden event caused her to lose control of her bicycle. However, the court does not have to find whether or not Arraj saw the rope since the plaintiff has not met her burden of proving that the rope was involved in any way with causing the accident.

simply no evidence to make it more likely than not that her contact with the rope, as opposed to some other factor, caused the plaintiff to fall and sustain injuries.

Plaintiff's reliance on the Incident Report filed by Officer Husgen is misplaced. The fact that he wrote that it "appears" that the bicycle "contacted the rope" does not answer the question which must be answered: did the "contact" take place before or after the fall. Thus, even disregarding the fact that Officer Husgen was not purporting to recreate how the accident happened, or that the record is devoid of any evidence that he was qualified to do so, the language of the Incident Report does not establish the critical element of causation.

Similarly, despite his "opinion" that Arraj became entangled in the rope causing her to fall, (and that she became entangled because she didn't see the rope), Mr. Quinn has offered no facts to support this theory. "Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993). An expert "must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment." Id. Here, again, there is no evidence that Mr. Quinn had made any effort to recreate the accident, or that he was qualified to do so. Nor does he cite to any facts to support his scenario, and there are no known witnesses to the accident. The principle that "conclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat summary judgment"

"applies with equal force to expert opinions." Magarian v. Hawkins, 321 F.3d 235, 240 (1st Cir. 2003) (internal citation omitted). In the instant case, the plaintiff has not met her burden of proving the element of causation. Therefore, the defendant's motion for summary judgment must be allowed.

### D. <u>Open and Notorious</u>

In light of the absence of proof of causation, plaintiff cannot maintain her claim of negligence. The defendant contends that her claim must fail for the additional reason that Arraj cannot meet her burden of proving that the defendant breached its duty of care because the existence of the rope was open and obvious, thereby relieving it of liability. This court finds that the analysis is not as straightforward as the defendant contends in light of recently evolving Massachusetts case law regarding a landowner's obligation to remedy even open and obvious dangers. However, a detailed analysis is not necessary in the absence of any proof that Arraj's failure to see the rope was the cause of the accident. Rather, this analysis merely highlights the speculative nature of the plaintiff's claim.

It is the plaintiff's theory that the defendant breached its duty by failing to make the ropes sufficiently visible, especially to bicyclists. It is well-established in Massachusetts that a property owner "owes a common-law duty of reasonable care to all persons lawfully on the premises[,]" including "an obligation to maintain his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." Soederberg v. Concord Greene Condo. Ass'n, 76 Mass. App. Ct. 333, 336, 921 N.E.2d

1020, 1023 (2010) (internal quotations and punctuation omitted). "It also includes an obligation to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." Dos Santos v. Coleta, 465 Mass. 148, 154, 987 N.E.2d 1187, 1192 (2013) (internal quotation omitted). Nevertheless, it is also well-established that "'[l]andowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards.'" Id. (internal quotation omitted). Thus, the defendant argues, since the rope in the instant case was open and obvious, and Arraj, in fact, admitted to seeing the rope, it cannot be held liable for any injury she incurred. See Hodgkins v. United States, No. 90-30051-F, 1992 WL 33824, at *2 (D. Mass. Feb. 18, 1992) (United States not liable for plaintiff's fall over a doormat on the top step of the post office, where condition was obvious, and plaintiff was personally aware of the condition of the mat and step); Brillante v. United States, 449 F. Supp. 597, 600 (D. Mass. 1978) (United States not liable for slip and fall on ice in a parking lot where plaintiff admitted knowing about patches of ice); Letiecq v. Denholm & McKay Co., 328 Mass. 120, 121-23, 102 N.E.2d 86, 88 (1951) (store not liable when customer tripped over stool in aisle that she had previously seen, but forgotten about).[6]

---

[6] While the defendant argues that the rope and pole system was obvious, Mr. Quinn has opined that the type of rope used made it difficult to see, especially for a bicyclist. The defendant has asked, in a footnote, that this court exclude the opinion as not being supported by the evidence. (Def. Reply (Docket No. 44) at 5 n.2). Admittedly, this court has difficulty accepting

-17-

This court agrees that Arraj's admission that she knew the ropes were strung across the parking lots, and observed them during her ride, at a minimum seriously weakens her case that the defendant is liable for any failure to warn. However, as the plaintiff points out, recent Massachusetts cases have focused on the principle that while a landowner may be relieved of a duty to warn about an open and obvious condition, the landowner "is not relieved from remedying an open and obvious danger where the landowner can and should anticipate that the dangerous condition will cause physical harm to the lawful visitor notwithstanding its known or obvious danger." Dos Santos, 465 Mass. at 154, 987 N.E.2d at 1192 (quotation and punctuation omitted). Thus, the case of Papadopoulos v. Target Corp., 457 Mass. 368, 930 N.E.2d 142 (2010), "explicitly reaffirmed [the court's] view that the existence of an open and obvious danger will not necessarily relieve a landowner of the duty to remedy that danger." Dos Santos, 465 Mass. at 155, 987 N.E.2d at 1193.

The defendant argues that it had no reason to anticipate that the rope could cause danger to a bicyclist given the number of years that the rope system had been used without incident. However, the Massachusetts court has expressly adopted comment f to

---

Mr. Quinn's opinion as being relevant to the instant case since it fails not only to account for Arraj's admission that she knew about the rope, but also requires a finding that Arraj could not "see" the rope and poles strung across quite a distance before the bicycle toppled over. (See note 5, supra). Nevertheless, this court will not consider the defendant's request to exclude the expert opinion, raised only in a perfunctory manner in a footnote. See Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 36 (1st Cir. 1994). Therefore, this court will assume that there is a disputed fact as to whether the rope was visible to a bicyclist at the time the accident occurred.

the Restatement (Second) of Torts § 343A.[7] See Dos Santos, 465 Mass. at 155, 987 N.E.2d at 1993. That comment states, in relevant part:

> There are ... cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.
>
> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, *where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.*

(Emphasis added). It is not clear that this principle would apply here where, a bicyclist would have to be distracted for a lengthy period of time not to notice the pole and rope barriers strung across the entire parking lot. Nevertheless, it is conceivable under comment f that an argument can be made that the law may require the defendant to anticipate a situation where a bicyclist was distracted, or forgot about the rope.

Whether the defendant in this case should have anticipated such a situation, and, if so, what it should have done to protect against it, are not questions that can be approp-

---

[7] Restatement (Second) of Torts § 343A(1) (1965) provides:
> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

riately answered on this summary judgment record. However, they do not have to be. Rather, the defendant's reliance on cases relating to open and obvious conditions, and the plaintiff's attempt to argue that those cases are inapplicable in light of comment f, merely highlight the fundamental flaw in the plaintiff's case: the cause of the accident is highly speculative. In light of the plaintiff's failure to establish that the rope, or the lack of visibility of the rope, caused her accident, summary judgment must be entered in favor of the defendant.

## V. **CONCLUSION**

For all the reasons detailed herein, the Defendant's Motion for Summary Judgment" (Docket No. 36) is ALLOWED.

　　　　　　　　　　　　　　　　　　　　　/ s / Judith Gail Dein
　　　　　　　　　　　　　　　　　　　　Judith Gail Dein
　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge